## Gulf, Colorado & Santa Fe Railway Company v. Jessie Delaney et al.

Decided January 13, 1900.

**1. Master and Servant—Railway Company—Wrongful Death.**

A railway company is liable for the death of one of its brakemen caused by a defect in a derrick used by a contractor in ballasting its track, where the contract for such work provided that the contractor should carry on the work in such manner as the chief engineer of the company should direct, and the latter had the right to have any workman discharged who should not perform his work in a proper manner.

**2. Same—Independent Contractor.**

Where a railway company fails to exercise reasonable diligence in furnishing its employes a safe place in which to work, it is liable for the death of an employe resulting from defects in the appliances of an independent contractor engaged in repairing its track.

**3. Same—Negligence—Guy Ropes Insecurely Fastened.**

Evidence that a brakeman was killed by the falling of derricks used by a contractor in unloading stone from cars on the track, the derricks being kept in position by guy ropes fastened to fence posts, one of which was rotten and pulled up, causing the fall, —warrants a finding that the railway company was guilty of negligence.

**4. Damages for Death of Parent—Right of Child.**

Where, in an action for damages for wrongfully causing the death of a brakeman, the verdict allowed $5000 to the widow of the deceased and a like amount to a son by a former divorced wife, ten years old at the time of his father's death, and not shown to have ever received any support from the father, such allowance in favor of the child was held not excessive. Following Railway v. Culpepper, 19 Texas Civil Appeals, 182.

Appeal from Tarrant. Tried below before Hon. Irby Dunklin.

*Spencer & Kincaid* and *J. W. Terry,* for appellant.

*Wynne, McCart & Bowlin* and *R. L. Carlock,* for appellees.

STEPHENS, Associate Justice.—William Delaney was killed October 15, 1897, about one mile north of Crowley, in Tarrant County, Texas, by the falling of two derricks situated on appellant's right of way, which were then being used to unload a car of heavy stones. He was in the service of appellant as freight brakeman, and was the head brakeman on the train which was being so unloaded.

This suit was brought by Jessie Delaney, his widow, and William Delaney, his son by a former wife (from whom he had been divorced), to re-

cover damages on account of the loss sustained by them in his death. The trial resulted in a verdict and judgment for them, each in the sum of five thousand dollars, from which this appeal is prosecuted.

The derricks, one on each side of the track, were fastened together overhead by wire ropes, and were steadied by guy ropes fastened to posts in the ground. The post on the west side of the track, which was only a fence post, had decayed, it seems, where it went into the ground, and consequently broke in two, and the post that held the guy rope on the east side of the track pulled up, so that in lifting the heavy stones both derricks fell, and in the fall Delaney was caught across the stomach by one of the wire ropes which held the derricks together overhead, and received the injuries of which he died in about one hour and a half.

The train on which Delaney was brakeman had just been placed in position for unloading the stones, and the crew, including Delaney, who was on a car of cross ties just ahead of the car of stone, were watching the men unload the latter, it being the business of the train crew to take care of the train and place it in proper position for unloading, but not to unload it themselves. This was done by the men then engaged in an extensive betterment of appellant's roadbed and track, under a contract originally entered into with appellant by Ricker, Lee & Co. for that purpose and afterwards sublet in part to John Buckley, who was prosecuting the work at the time and place of the accident.

This contract contains numerous articles, and is set out in full in appellant's brief. Upon it is founded the main contention of appellant, that the railway company was not liable, because the work was being done for it by independent contractors. We find, however, in the seventh article the following: "The contractor will carry on and prosecute the work in such *manner*, at such times and at such points or places as the chief engineer of the company shall direct;" and in the ninth the following: "Any person in the employ of the contractor, or any subcontractor, who, in the opinion of the chief engineer of the company, shall not perform his work in a proper manner or shall be riotous, disrespectful, intemperate, disorderly, or otherwise troublesome, shall at the written request of the chief engineer be forthwith discharged by the contractor." Other articles contain provisions of like import.

But if the contract had contained no such provisions, we must yet hold appellant's obligation to its own servants while engaged in operating its own trains over its own track, to furnish them a reasonably safe place to work, inhered in the very contract of employment, and that nothing short of the exercise of reasonable care and diligence on its part to discharge that duty would absolve the company from liability.

We conclude that the evidence warranted the jury in finding appellant guilty of negligence in this respect, for it is evident that the guy ropes had not been securely fastened to objects in the ground, as the dictates of common prudence required, so as to hold the derricks in position, and appellant should not have allowed the derricks to be used over its tracks and men in that condition, without taking some care at least to discover

and guard against the danger. The train crew had a right to assume that their master would not without forethought or precaution of any sort order them into such a place of danger.

The jury were also warranted in finding that the deceased was at his post of duty, and that he was not guilty of contributory negligence.

We find no merit in any of the assignments complaining of the court's action in charging the jury, or in any other assignment, for that matter, unless the verdict for $5000 in favor of the son was excessive in amount. In this respect the case was somewhat peculiar. The deceased had been divorced from his first wife, the mother of his only son, since June 10, 1893, the divorce decree, which was rendered in the State of Tennessee, where the mother and son then as well as thereafter lived, awarding the custody of the son to the mother. When his father was killed the boy was about 10 years old, and was still living with his mother in Tennessee, and so far as the record shows had never received anything from his father, who seemed to have turned substantially all of his earnings over to his second wife during the four years of their marriage.

Deceased was earning $60 per month at the time of his death, was 31 years old, and was strong, healthy, temperate, and industrious. No children were born of the second marriage. To allow the son $5000 as *actual* damages upon such a showing seems to us like allowing a large sum of money where nothing would probably have been received had the deceased lived, and we hesitate to approve so large a verdict merely for the loss of the abstract right of the son to claim a support from his father; but we are unable to distinguish the case from that of Railway v. Culpepper, 19 Texas Civil Appeals, 182, in which writ of error was denied. 47 S. W. Rep. In that case a verdict allowing Maud Culpepper $4000 was held not to be excessive. The case in this respect was thus stated in the opinion: "Culpepper, before his marriage with appellee, had been divorced from his first wife, the mother of Chris and Maud, by a decree which gave to him the custody of Chris, but made no provision as to Maud. At the time of the father's death Chris was 12 years and Maud 10 years of age. Maud remained with her mother, who is still living. The evidence showed that Culpepper devoted his earnings to his wife and son, and there was no proof that he contributed to the support of his daughter." The ground of the ruling was thus stated in the opinion: "We are also of the opinion that Maud Culpepper was entitled to recover, since she had the legal right to a support from her father, of which she was deprived by his death. Railway v. Spicker, 61 Texas, 427." For other authorities bearing more or less upon the question, see McGown v. Railway, 85 Texas, 289; Railway v. Taylor, 5 Texas Civ. App., 668; Railway v. De Bajligethy, 9 Texas Civ. App., 108; Railway v. Frazier, 34 S. W. Rep., 664; Railway v. Johnson, 78 Texas, 536; Railway v. Burleson, 26 S. W. Rep., 1107; Railway v. Hudman, 8 Texas Civ. App., 309; Railway v. Rasberry, 13 Texas Civ. App., 189; Railway v. Cullen, 29 S. W. Rep., 257; Railway v. Johnson, 10 Texas Civ. App., 254; and other cases cited as "additional authorities" by appellees.

The contention is plausibly founded on some of the cases above cited, particularly that of Railway v. Johnson, 10 Texas Civil Appeals, 254, that unless the verdict as a whole was excessive, it should stand, though in apportioning the total sum allowed too much was given to the minor son. We question, however, the soundness of this construction; and the judgment in the Johnson case was not affirmed solely, if at all, on this ground.

But upon the authority of the Culpepper case, supra, we overrule the contention that the verdict was excessive, and affirm the judgment.

*Affirmed.*

Writ of error refused.