# CHARLESTON

VICKERS v. KANAWHA & WEST VIRGINIA RAILROAD CO.

Submitted June 11, 1908.    Decided December 9, 1908.

1. MASTER AND SERVANT—*Competency of Employee.*

The general rule, subject to exceptions, is that where one has contracted with a competent and fit person exercising an independent employment to do a piece of work not in itself unlawful, or of such a nature that it is likely to become a nuisance, or to subject third persons to unusual danger, according to the contractor's own methods, and without being subject to control except as to results of his work, will not be answerable for the wrongs of such contractor, his sub-contractors, or his servants, committed in the prosecution of such work. (p. 477.)

2. SAME—*Place of Employment.*

But with respect to railroads, the non-assignable duty of the master to provide its servant a reasonably safe place to work, extends to the entire track over which the servant is required to pass in the discharge of his duties, and this is a positive duty, which although entrusted to an independent contractor, will not absolve it from liability for the non-performance thereof. (p. 477.)

3. SAME—*Sub-Contractor.*

Where one is employed by a railroad company as an independent contractor to do certain work in the construction of its road bed, in all matters incident to the use of its tracks permitted by such company, the contractor and his workmen represent the will of the company, and its responsibility remains. (p. 478.)

4. SAME.

Although a railroad company employ a competent independent contractor, to do certain work, and in the execution of his contract permits him to suspend over its tracks guy-ropes, the effect of such contract, with respect to such ropes, is simply to delegate to such independent contractor performance of the non-assignable duty of such company, to maintain a reasonably safe place for its servants to work, rendering it liable for his negligent performance thereof. (p. 478.)

5. SAME.

Where a railroad company has permitted the erection of guy ropes over its tracks, by an independent contractor employed to perform a part of the work of constructing its road bed, it, will, nevertheless, be rendered liable for any negligence on the part of such independent contractor in relation to such guy-ropes, whether competent or not, although it may not have had actual notice of such negligence in time to have avoided injury to its servant resulting there-

from.   In such cases the law requires inspection and tests ade--
quate to avoid the dangers.  (p. 479.)

6.  Same—*Relationship*.

Where a railroad company entrusts performance of any of its posi-
tive duties to its servants, to an independent contractor; his relation-
ship to the defendant becomes that of vice-principal, and his  neg-
ligent performance of those duties becomes notice to his principal,
rendering it liable for injuries to its servants resulting therefrom..
(p. 479.)

Appeal from Circuit Court, Kanawha County.

Suit by Charles Vickers, infant etc., against the Kanawha
& West Virginia Railroad Company.   Judgment for defend-
·ant and plaintiff appeals.

*Reversed and New Trial Awarded.*

Wertz & Van Fleet, for plaintiff in error.

Chilton, McCorkle & Chilton, for defendant in error.

Miller, Judge:

This case is a companion of *Newhouse* v. *Kanawha & W.*
*Va. R. Co.*, 59 S. E. 1071.   In that case, as in this, the court
below sustained the motion of the defendant to strike out the
plaintiff's evidence and direct a verdict for the defendant.
We reversed the judgment below in the *Newhouse case*,
being of opinion, that the evidence made such a *prima*
*facie* case of negligence as entitled the plaintiff to have the
same submitted to the jury.   Since that decision, but pend-
ing a petition here for a re-hearing, this case was tried and
determined in favor of the defendant, as stated.

The plaintiff, an infant, was employed by defendant, along
with Newhouse and others as a day laborer, in building a
railroad from Charleston by the way of Elk River and Blue
Creek to a point on said Creek.   The road was not com-
pleted, but some trains were being run while the work of
construction was still going on.   The plaintiff by arrange-
ment with the company, was with the other laborers carried
to and from his place of employment along the road, and to
and from his boarding place, on the work train of the defend--
ant, consisting of an engine and a flat car.   At a point near
the defendant's track on Blue Creek, was a stone quarry, and
where, by permission of the company, a derrick used in load-

ing stone had been erected by one Tully, an independent contractor. The derrick was supported by four guy ropes, two of which were stretched across and made fast on the opposite side of defendant's track. May 23, 1906, the day of the accident, at three o'clock P. M., the work train, on which plaintiff was a passenger, on its outward trip passed safely under these guy-ropes, as it had been doing daily for two or three months; being delayed at that point, not, as shown in the *Newhouse Case*, by the sagging of the guy-ropes over the track, but by the act of some workmen employed there in dragging a rope across the track. On the return trip that day, however, between five and six o'clock in the evening, in attempting to pass under the ropes the cab of the engine caught the first of the ropes, dragging the other down and causing it to sweep across the flat car being pushed by the engine, and to drag the plaintiff off between the car and the engine, the engine passing over both his legs, mashing them, and resulting in their amputation, one at the knee joint, and the other between the knee and ankle. It was proven at the trial that on the day of the injury the derrick was being dismantled; that a car for removing it had been set there for that purpose, and that some thirty minutes before the work train reached that point on its return trip these guy-ropes across the track had been loosened by some men employed by Tully, the contractor, causing them to sag, resulting in the injury to the plaintiff, and for which this action is brought.

It did not appear in the *Newhouse Case* that the derrick in question belonged to Tully, and had been employed by him as an independent contractor, and, as now appears in this case, that the accident, resulting in the injuries to plaintiff, was directly traceable to the negligence of Tully, or his employees, in loosing the guy-ropes and allowing them to sag, and to remain in that condition, as stated, when encountered by the work train.

The general rule, relating to master and servant, requiring evidence of some affirmative acts of negligence of the master, either of omission or commission, pertaining to his duties to his servant, in order to render him liable to the servant for injuries sustained, was thought, in the *Newhouse Case*, to be satisfied by the evidence tending to show the sagging of the guy-ropes, and notice thereof to the defendant on the out-

ward trip, which, until explained by defendant consistent with the exercise of due care, entitled the plaintiff to a submission of his case to the jury.

In the *Newhouse Case* the defendant relied on the want of evidence to show negligence of the defendant. In the present case negligence is not only shown but admitted. But the defendant relies on the proposition that the negligence being primarily that of Tully, an independent contractor, or his employees, its whole duty to the plaintiff to provide him with a reasonably safe place to work, was discharged when it employed Tully, a competent person, and permitted him to suspend the guy-ropes in question over its track, and, as counsel for defendant say in their brief, we are brought face to face with the question, what is the duty of a railroad company under the circumstances of this case?

The general rule with respect to the liability of the owner for the acts of an independent contractor, as stated in 1 Thomp. on Neg. section 621, is "that one who has contracted with a competent and fit person exercising an independent employment to do a piece of work not in itself unlawful, or of such a nature that it is likely to become a nuisance, or to subject third persons to unusual danger, according to the contractor's own methods, and without being subject to control except as to results of his work, and subject to other qualifications hereafter stated, will not be answerable for the wrongs of such contractor, his sub-contractors or his servants, committed in the prosecution of such work."

The general rule, stated in the *Newhouse Case*, is that one of the non-assignable duties of a master is to provide his servant a reasonably safe place to work, this rule with respect to railroads, extending to the entire track over wich the servant is required to pass in the discharge of his duties. And with respect to railroads this is a positive duty, which although entrusted to an independent contractor, will not absolve it from liability for non-performance. 1 Thomp. on Neg. sections 646-665; *McCafferty* v. *Spuyten Duyvile, etc., R. Co.*, 61 N. Y. 178; *Ryder* v. *Thomas*, 13 Hun. (N. Y.) 296.

But let us inquire whether Tully, the contractor, stood in the relation of independent contractor with respect to the operation of the railroad and furnishing the plaintiff a rea-

sonably safe place to work? Assume that he had an independent employment to build abutments etc., and permission of the railroad company to stretch his guy-ropes across the track of the company, can it be said he thereby extended his position to that of an independent contractor with reference to the operation of the railroad of the defendants? We think not. He was employed for no such purpose. The permission to stretch his guy-ropes across the track undoubtedly implied a contract on his part to securely fasten them, and to protect the defendant and its servants from all dangers resulting from the breach of such implied contract; but this implied agreement would certainly not absolve the defendant from liability for injuries to its servants. In *Ortlip* v. *Philadelphia etc. Traction Co.*, 198 Pa. 586, it was held that "since the contract there involved was independent only as to the work of constructing the road-bed, in all matters incident to the *use of the track*, the contractor and their workmen represented the will of the company and its responsibility remained." 4 Thomp. on Neg. section 4513.

But if we concede the independence of the Tully contract, and that by its terms, or by implication, it covered the discharge by the defendant of its duty to plaintiff to maintain a reasonably safe place to work, the effect of such contract was simply to delegate to Tully performance of the non-assignable duty of the defendant, rendering it liable for the negligent performance thereof by him. 4 Thomp. on Neg. section 4931, citing among other cases, *North Chicago St. R. Co.* v. *Dudgeon*, 83 Ill. Appel. Ct. 528; s. c. aff'd. 184 Ill. 477; 56 N. E. Rep. 596; *Woodman* v. *Metropolitan R. Co.*, (Mass.) 21 N. E. Rep. 482; *Moran* v. *Corliss Steam-Engine Co.*, (R. I.) 45 L. R. A., 267; *Toledo Brewing Co.* v. *Bosch*, 41 C. C. A. 482, 101 F. R. 530; see also 2 Bailey on Per. Inj. sections 2561, 2572, citing *Burnes* v. *Kansas City Ft. S. & M. R. Co.*, 129 Mo. 41, 31 S. W. 347; *Trainor* v. *Phil. & R. R. Co.*, 137 Pa. St. 148; *Titus* v. *Bradford B. & K. R. Co.*, 136 Pa. St. 618, 626; *Carrico* v. *W. Va. Cent. & P. Ry. Co.*, 39 W. Va. 86, 93; *Jackson* v. *N. & W. R. R. Co.*, 43 W. Va. 382-383, and *McCreery's Adm'x.* v. *Railway Co.*, 43 W. Va. 112, 27 S. E. 327.

In the *North Chicago St. R. Co. Case* this rule was applied in an action for damage by a railway conductor for in-

juries sustained from granite blocks piled up along the tracks by an independent contractor engaged in repairing the tracks. The decision in this case is based in part, at least, on the exception to the general rule respecting the liability of employer for the negligence of an independent contractor, that when a corporation is exercising some chartered privilege or power which could not be exercised independently of its charter, it can not delegate such chartered privilege to any one. But the case did not turn solely on this exception to the general rule; for besides this, the court says: "It should not be forgotten in addition to the foregoing rule, that the law requires that the master shall provide a reasonably safe place for the servant to work, and, failing so to do, is answerable for resulting injuries, unless the dangers are such as are reasonably incident to his employment, or of which the servant has equal knowledge or means of knowledge with the master, or where the danger is imminent." In *Brewing Co.* v. *Bosch*, the brewing company was held liable for injuries sustained by its servant from the negligence of an independent contractor, employed to repair a roof, in displacing and removing weights from an overhead beam resting on the roof, while engaged in repairing the roof. The decision is predicated upon the principle that "a positive personal duty cannot be delegated to an agent or contractor, and that the obligation in such cases is to do the thing required, and not merely employ another to do it, and, to bring a case within the rule, it is sufficient if the duty is one to the public or a third person, and imposed by law or by statute." This is a well considered case, and reviews many cases; some of the same cases cited by us, and among them, *Burns* v. *Railroad Co.*, 129 No. 41, 56, 31 S. W. 350. In that case the court says: "The duty of keeping its road, track and yard in a reasonably safe condition is a personal duty, which the master owes the servant; and it cannot delegate this duty to any servant, high or low, nor can it avoid liability by letting out a part of its duties as a common carrier to independent contractors. While for many purposes, this relation of independent contractors will be recognized, it cannot be sustained to shield a master from those positive personal obligations cast upon him by his relations to his servant." This is the same doctrine applied in *Golf·C. & S. F. Ry. Co.* v. *Delaney*, 22 Tex. Civ. App.

427, 55 S. W. 538; *Jacobson* v. *Johnson*, 87 Minn. 185; *Scandell* v. *Col. Const. Co.*, 64 N. Y. Supp. 232; *Hustis* v. *Jas. A. Banister Co.*, 63 N. J. L. 465, all derrick cases.

Two other propositions are argued by way of defense: First, that having employed a competent independent contractor to perform a part of the work of constructing its road bed, and permitted the erection of the derrick ropes over its track, the defendant is not liable for his negligence without actual notice in time to avoid the injuries; and, second, that it is not shown that defendant had notice of the condition in which the guy-ropes were left by the contractor shortly before the accident, and in time to have averted the danger; and consequently, that the risk must be regarded as one assumed by the plaintiff, and for which defendant can not be rendered liable. To support the first proposition defendant's counsel rely mainly on the case of *Norfolk & Weston R. Co.* v. *Stevens*, 97 Va. 632, where it was held, agreeably to the general rule, but without any reference to the exceptions thereto, that "the negligence of a bridge company as an independent contractor, in removing too soon the false work on a new railroad bridge which it had contracted to substitute for the old one without the interruption of traffic, in consequence of which the new bridge falls with a train, causing the death of a fireman, does not render the railroad company liable, if it had a proper contract with the bridge company, and that was an established and reputable concern, largely engaged in such work and having the confidence of the business public." In the opinion the court says: "Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence, and the unbending test of negligence, in methods, machinery and appliances is the ordinary usuage of business. No man is held by law to a higher degree of skill than the fair average of his profession, or trade, and the standard of due care is the conduct of the average prudent man."

We do not think this case takes into consideration the well recognized exceptions to the general rule we have referred to. The positive duties of a railroad company to its employees, already noted, in connection with citations of other cases, cannot be discharged by the delegation of those duties to others, whether competent or not. The Virginia case is

reported in 46 L. R. A. 367, with an editorial note referring to a note to *Hawver* v. *Whalen*, (Ohio) 14 [L. R. A. 832, citing the cases with which it is in conflict. It is certainly in conflict also with our own cases, and the cases cited from other courts. Mr. Labatt says: 1 Labatt, section 153, page 327-328: "There are at least two very weighty reasons why the theory that a master is entitled, as a matter of law, to rely on the quality of appliances obtained from a reputable manufacturer should be rejected. One of these is that such a theory is essentially inconsistent with the doctrine of non-delegable duties;" and the other reason given is, that, "according to the rule adopted by most of the authorities, the servant has ordinarily no right of action against the manufacturer, and, if he cannot recover of his master he can not recover at all. Assuming the defect which caused the injury to have been discoverable by the exercise of proper care, some one ought, in fairness, to be held responsible for its existence, and it is a mere mockery of justice to absolve the master simply on the ground that he was justified in trusting the skill and diligence of a person, who, if that skill and diligence were as a matter of fact, not exercised, is not liable to the servant because there is no privity of contract between them." See also the discussion of the subject of delegation of personal duties to an independent contractor, 2 Labatt, section 558, page 1634. This writer, criticising the doctrine of *Trainor* v. *Philadelphia etc. R. R. Co.*, 137 Pa. St. 148, as being in conflict with the later case of *Ortlip* v. *Phil. & W. C. Traction Co.*, 198 Pa. St. 586, already referred to, says: "It is worth observing that, as the doctrine of non-delegable duties has not been formulated with much distinctness at the time the earlier case was decided, it is extremely probable that the effect of such a conception as qualifying the rule with regard to independent contractors was not considered at all by the court. Indeed the opinion delivered gives no indication that this aspect of the relations of the parties was taken into account." And, at page 1635, Mr. Labatt also states, in the text, the doctrine in Virginia, announced in the case referred to; but in a note says, in reference to it: "The court does not refer to any of the authorities opposed to its own conclusion, and contents itself with applying the general rule as to independent contractors, without noticing the pos-

sibility of an exception to that rule in the case of absolute duties." In the Virginia case the accident was due to the act of the bridge company in removing the false work under the incompleted span, the other having been completed, on the supposition that it was safe to do so, the train on which the plaintiff was at work passing safely over the completed span, but crashing through the other. We think the great weight of the modern authorities require inspection and tests adequate to avoid such imminent dangers. We must, therefore, negative the first proposition.

Did the defendant have notice sufficient to charge it with the negligence of the contractor? This is the difficult question in the case. It is true as argued by defendant's counsel, that the master is not an insurer of his servant's safety; and is "not answerable at law for a failure to avert or avoid peril that could not have been foreseen by one in like circumstances, and in the exercise of such care as would be characteristic of a prudent person so situated." 1 Labatt, section 142. Knowledge actual or obtainable by reasonable tests and inspections are required to charge the master. 1 Labatt, chapters X and XI. In notes 2 and 3 to section 156, chapter XI, Mr. Labatt has collated a large number of cases where the servant under varying facts and circumstances was not allowed a recovery; and in note 5, to the same section, a great many other cases, more or less difficult of reconciliation with the former, where the servant was allowed to recover, and it would serve no good purpose here to attempt to harmonize these conflicting decisions. Many of them relate to defects in machines or instrumentalities actually in use by the servant, and not to the safety of the place of work; many to hidden defects.

Assuming that the guy-ropes over the track were and had been securely fastened during the operation of the derrick, and up to within a half hour before the accident and did not when thus used render the track at that point unsafe, as to which there is no evidence to the contrary, was the defendant chargeable with notice of the dangerous condition in which they had been left by the servants of Tully, the contractor, a half hour before the accident occurred, so as to render it liable to plaintiff? No amount of inspection prior to the time when the ropes were loosened would have discovered the dan-

gerous condition of the guy-ropes a half hour later. Had sufficient time elapsed after the ropes were loosened to impute notice? Notice to a mere co-servant "not chargeable with the performance of the duties which supervened as a result of the acquisition of that knowledge" will not do. 1 Labatt, section 149; but notice to a vice-principal is notice to the master. · 1 Labatt, section 150. If Tully be treated as vice-principal, under an express or an implied contract with defendant, to keep the railroad track at that point, as regards the derrick and guy-ropes, in safe condition, then notice to him, or his servants in charge, would be imputable to the defendant. 4 Thomp. on Neg. section 4961; 2 Labatt, section 558. Another duty of the master, respecting proper inspection imposed by some cases, is "to keep a reasonably careful watch upon the various parts of his plant, to the end that they might not unduly imperil the safety of his servants by way of the temporary conditions which the progress of the work might create in their local relations to each other or to the servants." 1 Labatt, section 164, and cases cited in note 2. Now the evidence of Jarrett, the brakeman, and of Morris, an employee of Tully, on cross-examination, though not quite so clearly as might be desired, tends to show that Tully was personally present, himself directing the dismantling and removal of the derrick. Jarrett says, Tully was working his men there at the derrick; Morris, that Tully and his men were dragging this block and tackle across the track at the time the train went up in the afternoon. Morris also says he did not know the guy-ropes were sagging until about two minutes before the train ran into them.

We are disposed to hold, on these authorities, and this evidence in this case, that as to the maintenance of the track in a reasonably safe condition, at the point opposite this derrick, Tully's relation to defendant was that of vice-principal, and that notice to him of the condition in which he had left the guy-ropes must be imputed to the defendant. Besides, the defendant evidently had notice from the progress of the work of the contractor to completion, and by setting the car there to remove the derrick, that it was about to be taken down, and of the dangers incident thereto, calling for greater care and superintendence on its part. This rule was applied in Rhode Island, in *Moran* v. *Corliss Steam Engine Co.*

The plaintiff sustained his injuries by coming in contact with an electric wire supplying a motor crane, installed on defendant's premises by an independent contractor, but not yet turned over to defendant, the result either of defective connection between the hauling chain and motor, insufficient insulation, or by the wire on defendant's premises, by the action of a high wind, coming in contact with wires outside its premises more heavily charged. The court says: "The accidental crossing or contact of wires caused by their sagging or breaking, or by high winds and other causes, and the consequent charging of the wire carrying a light current with a dangerous current from a more heavily charged wire, is, in our opinion, sufficient frequent occurrence to have suggested to defendant the liability to accident from that cause, and to have required it to take precautions against injuries to its employees thereby." The application of the same principle is further illustrated in *Gulf C. & S. F. Ry. Co.* v. *Delaney*; *Woodman* v. *Metropoliton R. Co.*, *supra*, and other cases cited.

In our opinion, therefore, the defendant having permitted the erection of this derrick so near to its tracks, supported as it was by these overhanging guy-ropes, was bound in the discharge of its non-delegable duty to its servants, to keep a watchful supervision over it; and that by the progress of the work, and by setting the car there for the removal of the derrick it was thereby chargeable with sufficient notice to require diligent supervision and inspection, necessary to avert the dangers incident to the work. Otherwise it could not have discharged its duty to its servants. These views require a reversal of the judgment and awarding the plaintiff a new trial.

Note: In his petition for a rehearing defendants counsel challenge the correctness of the opinion filed. They say it is in conflict with *Sanderson* v. *Panther Lumber Co.*, 50 W. Va. 42, and that if it is intended to overrule that case we should say so. That was a fellow servantcy case. In reference to the facts recited, and the basis of the decision, it is said, at page 45: "So the condition of the track cannot and should not have anything to do with the determination of this case, especially as the plaintiff admits that it was the negligence of the engineer in reckless management of the train and engine,

owing to bad temper, that caused the accident. Knowledge of the defect in the engineer's power to properly control his temper was not brought home to defendant, nor the defect in the sand pipe or want of sand. Hence the defendant could not be held liable by reason of these things, for it was not shown that it was guilty of negligence with regard thereto." It is apparent, therefore, that the act of negligence relied on in that case, and on which the decision turned, was purely an act of negligence of a fellow servant in the operation of the road, having no reference to the question of a safe place to work. In *Jackson* v. *N. & W. R. R. Co.*, cited in the opinion, JUDGE BRANNON, referring to the non-assignable duties of the master, at page 383, says: "These duties are sometimes spoken of as duties in construction, preparation, and preservation, as contrasted with mere work of operation. For instance, the construction of the railroad or other work, the preparation of machinery and implements to be used in the business, the preservation of the tract or working place, or machinery and appliances, in proper, safe condition, and the selection of proper servants to work." And at page 384, he says: "You can not make the master liable for an act of mere operation, no matter by what servant done. You can not exempt him from an act not one of mere operation, but of his personal duty, though done by any servant." The first point of the syllabus in that case is: "The test whether a master is liable to one servant for the negligence of another servant is the character of a negligent act. If it be in the doing of an act incumbent on the master as a duty of the master to the servant, the master is liable; otherwise not."

On the question of what is sufficient notice to the master in the case of defective machinery, applicable also to a safe place to work, this Court said, in *Riley* v. *Railway Co.*, 27 W. Va. 160, "It may also be observed that, according to the rules and principles hereinbefore stated and discussed, the knowledge of the unsafe or the defective condition of the machinery, &c. mentioned in said third proposition, if brought home to the servant or middleman, to whom the duty of remedying or repairing such machinery, &c. has been delegated, or if he by the use of due care and diligence ought to have discovered it, will be considered notice to or knowledge by the company. What is notice to such servant will be

treated as notice to the company and what he ought to know and might know by due care and diligence, will be regarded as known by the company, and it will be held accountable in such case to the same extent that it would, if it had the knowledge or means of knowledge possessed by such servant."

The doctrine of the case of *Norfolk &c. Ry. Co.* v. *Stevens*, 97 Va. 632, is again urged for consideration, and as propounding the correct rule of law applicable to this case. As we pointed out in the opinion, that case failed to recognize the exceptions to the general rule stated, governing this case, and which in our opinion should have controlled that case also, and for which it has been criticised. No court, so far as we have found, has approved it, and it is opposed, not only by our own cases, but by many other decisions.

Out of respect for the able counsel for defendant and on account of the vigor with which he has pressed the subject upon us, as well as our great desire to reach proper conclusions, we have carefully re-considered the opinion, and re-examined the many text books and court decisions on the subject, and after having done so we have come again to the deliberate judgment that we have announced no new principle, nor departed from the well beaten path marked out by the authorities cited and many others that might be cited in the support thereof.

*Reversed and New Trial Awarded.*